Scott, judge,
delivered the opinion of the court.
This was an action of ejectment commenced on the 4th of March 1842 in the St. Louis circuit court by Lindell against Cabunne for a tract of land lying in the county of St. Louis.
Lindell claimed Under a New Madrid certificate granted by the recorder of land titles to Joseph Hunot or his legal representatives dated 12th August 1816. Evidence was also given of a notice of entry by Jos. C. Brown for Rufus Easton. Rufus Easton as the legal representative of Jos. Hunot, entered 480 acres of land by virtue of the above certificate No. 161 describing the land entered. Evidence was then given of the survey of the said entry dated 23d June 1819, afterwards a conveyance was read showing Lindell to be the representative of Hunot. The possession of the premises in controversy by the defendant was proved.
After the rejection of some evidence of a paper title, offered by the defendant, testimony was given tending to show an uninterrupted adverse possession in him for more than twenty years prior to the commencement of this suit.
The plaintiff then showed, that the survey of the location made by *187 Easton was not returned to the recorder of land titles until the 8th January 1833.
The court at the instance of the plaintiff gave the following instruction : That if the jury find from the evidence that the return of the survey of the tract of land located for Jos. Hunot or his legal representatives, was made by the Surveyor General to the recorder of land titles on the 8th January 1833, then the possession of the land in dispute by the defendant and those under whom he entered into possession is no bar to the plaintiff’s recovery. This instruction was excepted to—verdict and judgment for the plaintiff.
When this ease was opened a difficulty presented itself as to the propriety of allowing the statute of limitation as a defence, in cases when the fee of the land in dispute had not passed from the government. In the case of Johnston vs. Irwin 3 Ser. & R. 292 a doubt was expressed how far the statute of limitation operates as to private persons, when the legal estate remains in the commonwealth, and the court considering- it a question of great importance declined giving an opinion in relation to it, afterwards however in the case of McKoy vs. the Trustees of Dickinson College 4 Ser. & R. 302 it was held that a title by warrant and survey without a patent is within the act of limitations and is barred by an adverse possession of sufficient duration. So in the case of King et al vs. Martin 5 Martin’s Lon. Rep. U. S. 197, it was held that settlers coming within the purview of the act of Congress of the 2d March 1805 for ascertaining and adjusting the titles a-nd claims to land within the territory of Orleans and district of Louisiana, may prescribe from the day that they were embraced by the dispositions of that law. These authoi'ities will warrant us in entering upon the investigation of the question here involved, without any expression of opinion as to the effect of a patent in such cases, issued after twenty years from the beginning of an inchoate title. Duke vs. Thompson et al 16 Ohio Rep. 34.
The doctrine of the cases of Bagnell et al vs. Broderick 13 Pet. 450, and Barry vs. Gamble 3 How 51, that until the plat and survey of the land located are returned to the recorder’s office, the land selected is not appropriated to the use of the New Madrid claimant, has been relied on by Lindell in support of the judgment of the court below. On the other hand it is said, that the law of those cases is in diametrical opposition to the views which have always prevailed in this state and that the location and survey have always been regarded as sufficient evidence to maintain an ejectment. I am not aware that under the law *188 for the relief of sufferers by earthquakes in New Madrid the question as to the time when the land becomes appropriated to the claimant has ever been discussed in our .courts. The notice of location to the Surveyor General when the land had been surveyed and the location and plat of survey when a survey was necessary, have always been regarded as sufficient to support an ejectment under our statute allowing such actions on New Madrid locations. Nor has the question been made, when the statute of limitations commenced running against a New Madrid claimant, whether from the date of the survey or fromsthe date of the return to the recorder’s office, admitting that by the law of this state the survey was evidence sufficient to maintain an ejectment, yet if by the laws of the United States a party has no title to the land, if it has not been appropriated to his use, could the state impose on him the necessity of bringing suit within a given time under the penalty of losing his land ? The strong probability that the land selected would ultimately become the claimants, might well warrant the legislature in giving him an action of ejectment. There is nothing in the nature of our political institutions, which prohibits the states from passing laws enabling those who have taken incipient steps tojobtain a title to lands from the United States, to protect that land from the depredation of trespasses, although such steps may not be regarded by the general government as conferring a title, such legislation, so restricted as not to interfere with the primary disposition of the soil by the United States is in conflict with no provision of the federal constitution and is a necessary attribute of sovereignty in the states to enable them to protect the rights of all those within their jurisdiction. The remedy offered by the state, the claimant might use or not at his pleasure, but as he claimed under the laws of the United States, and looked to them for the inception and consummation of his grant, he could not be compelled by state legislation to bring suit before there was an actual appropriation of the land for his use in pursuance of the laws of the United States. This view of the matter reconciles the construction given to our statute regulating the action of ejectment with the interpretation! of the act for the relief of the sufferers in New Madrid by those courts whose province it is to expound it and to whose opinions we are compelled to conform.
It was said, that the question as to the time when the land first became appropriated to the use of the claimant did not arise in the case of Bagnel vs. Broderick. It is true that the cause might have been *189 determined without an expression of opinion in relation to this question. But upon examination it will be found that the point was involved and that it was determined. As this is a question arising under the laws of the United States and as the highest tribunal known to the federal constitution has pronounced its judgment in relation to it, that judgment is obligatory on this court whatever opinion might be entertained of its correctness.
I am not impressed with the force of the argument drawn from the act of the 26th April 1822 to perfect certain locations and sales of public lands in Missouri. The second section of the act provides, that hereafter the holders and locators of N. Madrid warrants shall be bound in locating them to conform to the sectional and quarter sectional lines of the public surveys, as nearly as the respective quantities of the warrants will admit and all such warrants shall be located within one year after the passage of this act, in default whereof, the same shall be null and void. It was contended that as the return of the plat and survey to the recorder constitute the location, and as the return in this case was not made until years after the appointed time, the location is therefore null and void. The court in the case of Bagnell vs. Broderick did not intend to define what is a location, but what constituted an appropriation of the land by the claimant. They hold that all the requirements of the act of 1815 must be complied with to make an appropriation. That although the claimant may select and have the lands surveyed, that will not constitute an appropriation without a return of the plat and survey to the recorder. It is obvious, that from the words of the section above cited, that it was only designed to hasten the action of the claimants in selecting and having their lands surveyed, and could never have been intended to affect them injuriously, for the neglect of officers over whom they had no control. If their lands had been located and surveyed within the time required by the act, it could not be contended, that a failure in the officer afterwards to make a return would render the location and survey void, though it might delay an appropriation of the land. Judge McBride concurring, the judgment will be affirmed.