Gray v. Givens.

————————◄●●►————————

GRAY *et al.*, Defendants in Error, v. GIVENS, Plaintiff in Error.

1. Where it appears from the "list of patent certificates prepared for issue by the recorder of land titles, under the act of Congress of February 17, 1815, (and supplementary acts) for the relief of those inhabitants of the county of New Madrid who suffered by earthquakes," that the recorder had prepared a patent certificate for issue to a New Madrid claimant, it will be presumed that a plat of survey of the land upon which the New Madrid certificate had been located had been previously returned to the recorder.

2. As a general rule the statute of limitations will commence running in favor of an adverse possession from the date of the accrual of a right to dispossess by action the adverse possessor.

3. An action in the nature of an action of ejectment may be maintained in this state on a New Madrid location.   (R. C. 1855, p. 690.)

4. The statute of limitations commences running against one claiming title under a New Madrid location from the date of the return of a plat of the survey of the land, upon which the location had been made, to the recorder of land titles.

5. It is competent for the general assembly to authorize actions of ejectment to be maintained on New Madrid locations, and the statute of limitations to run against New Madrid locators, previous to the issuing of patents by the United States ; to do so is no interference " with the primary disposal of the soil by the United States."

6. In an action in the nature of ejectment, although the plaintiff claims the whole, he may recover an undivided part.

7. If he show himself entitled to an undivided interest in the premises in controversy, he can recover only such undivided interest, although the defendant should be a stranger to the plaintiff's title; he will hold the moiety recovered in common with the defendant.

*Error to Cooper Circuit Court.*

This was an action in the nature of an action of ejectment to recover possession of a part — to-wit, north-west quarter and the south-west quarter—of section 9, in township 48, of

range 16, in the county of Cooper. Plaintiffs claim title under a New Madrid location as the legal representatives of William Cox. Said Cox possessed a "head-right" in the county of New Madrid, which was afterwards confirmed by act of Congress. This "head-right" in 1805 he conveyed to Edward Robertson, sr. Edward Robertson, sr., conveyed a portion of this "head-right"—300 arpens—to his son, Edward Robertson, jr., who took possession. After the confirmation to Cox, he and his wife, at the request of Edward Robertson, sr., conveyed the said 300 arpens to Edward Robertson, jr.; who afterwards conveyed the same to John C. Gray, sr., the ancestor of plaintiffs. These conveyances were made before the New Madrid certificate issued. There was evidence tending to show that two hundred arpens more of said "head-right" was held by John C. Gray by direct purchase from Edward Robertson, sr. The deed was lost or mislaid. The New Madrid certificate—No. 453—was issued October 6, 1818, and was located the same day on the section in controversy. The patent to William Cox, or his legal representatives, was issued in 1855.

The defendant relied on the statute of limitations; and for the purpose of making out his defence offered in evidence a tax deed to one Kavenaugh, and offered to show that Kavenaugh and those holding under him had been in adverse possession for more than twenty years before the commencement of this suit. The court excluded the testimony.

The court, at the instance of plaintiffs, gave the following instructions to the jury: "If the jury believe from the evidence that the plaintiffs were legally entitled to the possession of the land in controversy or of any part thereof at the commencement of this suit, then they must find their verdict for the plaintiffs. 2. If the jury believe from the evidence that Edward Robertson, sr., before the New Madrid certificate was issued to William Cox or his legal representatives, sold to his son, Edward Robertson, jr., 300 arpens of said Cox's "head-right," and that his son took possession of the same, and afterwards and before the issuing of said New Madrid

certificate, the said William Cox and his wife, at the request of said Edward Robertson, sr., made the deed, read in evidence, to said Edward Robertson, jr., for said 300 arpens, and that the said Edward Robertson, jr., afterwards made the deed, read in evidence, for said 300 arpens to John C. Gray, deceased, in his lifetime, then the ownership was thereby vested in said John C. Gray ; and if the jury further find that, after so becoming the owner of said 300 arpens, the said John C. Gray departed this life leaving the plaintiffs his heirs at law, as stated by Susan Gray in her deposition, then the plaintiffs thereby became and are legal representatives of William Cox within the meaning of the patent from the United States read in evidence, and as such are legally entitled to recover the possession of the land in controversy from the defendant. 3. If the jury find from the evidence that William Cox conveyed his ' head-right' to Edward Robertson, sr., before the New Madrid certificate was issued to said Cox or his legal representatives, and that said Robertson, before said New Madrid certificate was issued, sold and conveyed 200 arpens of said ' head-right' to John C. Gray in his lifetime, then the ownership of said 200 arpens was thereby vested in said John C. Gray ; and if the jury find that the said John C. Gray, so being the owner of said 200 arpens, afterwards departed this life leaving the plaintiffs his heirs at law, as stated by Susan Gray in her deposition, then the plaintiffs are legal representatives of William Cox within the meaning of the patent from the United States in evidence, and as such they are legally entitled to the possession of the land in controversy, and are entitled to recover the possession thereof from the defendant."

The defendant prayed the court to give the following instructions : " 1. The certificate of new location issued by the recorder of land titles at St. Louis, in the year 1818, in the name of William Cox or his legal representatives, and the patent issued by the United States thereon in the name of said Cox or his legal representatives, dated ——, 1855, both of which have been read to the jury by plaintiffs, are no evi-

dence that John C. Gray, sr., the ancestor of plaintiffs, and through whom they claim title to the land in controversy, was the owner of the 'head-right' or the legal representative of said Cox. 2. If the jury believe from the evidence that William Cox in the year 1805, by deed of that date, conveyed to Edward Robertson, sr., his whole 'head-right,' situate in the county of New Madrid, and in lieu of which the land in controversy was located; and further find that John C. Gray, sr., did not, subsequently to said deed of 1805, by direct or mesne legal conveyances from said Edward Robertson, sr., derive title to said 'head-right,' then said Edward Robertson, sr., was the legal representative of said William Cox, and the jury must find for the defendant. 3. The deed executed by William Cox and wife on the 31st day of December, 1813, to Edward Robertson, jr., for the quantity of 300 arpens of the 'head-right' conveyed in 1805 by said Cox to Edward Robertson, sr., and which was read to the jury by plaintiffs, is no evidence of a conveyance from Edward Robertson, sr., to Edward Robertson, jr., of 300 arpens of said head-right; and the jury are to disregard said deed in making their verdict. 4. Oral evidence can not be substituted for any instrument which the law requires to be in writing. The jury will therefore exclude from their consideration all admissions proved to have been made by Edward Robertson, sr., of having conveyed his right to the Cox head-right. 5. If the jury believe from the evidence that Cox's original head-right was one thousand arpens, and that the plaintiffs have shown themselves entitled to any part of the head-right, their interest in the new location is in the same proportion as it was in the head-right, and they can only recover from Givens such proportion of the amount he holds as the amount he holds bears to the 640 acres on the new location. 6. The plaintiffs in this case must recover upon the strength of their own title and not upon the weakness of the adversary. 7. If the jury believe from the evidence that William Cox, in 1805, conveyed his head-right to Edward Robertson, sr., it rests upon the plaintiffs to deduce their title from Robertson, sr.,

in writing ; and if they have failed to do so, the jury must find for defendant. 8. The jury can not, in this case, find any thing for rents or for waste and injury."

Of these instructions asked the court gave the 1st and 6th, they not being objected to by plaintiffs, and refused the others. Exceptions were duly taken. The jury found a verdict for plaintiffs.

*Morrow*, for plaintiff in error.

I. All the parties in interest ought to have joined in the suit, and not having done so, the first instruction asked by plaintiff in error ought to have been given. (Sess. Acts, 1849, p. 75–6, sec. 1—7.)

II. The court below erred in refusing to receive the proof offered by plaintiff as to his possession of more than twenty years of the premises in question, and in allowing the evidence to go to the jury in relation to conveyance by Edward Robertson.

III. The statute of limitations begins to run from the moment the right of entry accrues, and a subsequent issuance of a patent will not abrogate or repeal our statute of limitation. (Rector 1 Walsh, 1 Mo. 238 ; Hunter v. Kemphill, 6 Mo. 106.) A party claiming under a New Madrid certificate had a right to enter the moment his location was made and completed according to the laws of the United States, without waiting for a patent ; and, having a right of entry, had a right to sue, and, having failed to assert his right, is barred by our statute of limitations. (R. C. 1825, p. 343, tit. Ejectment, sec. 2 ; R. C. 1835, p. 234 ; R. C. 1845, p. 440 ; Mercas' Lessee v. Selden, 1 How. 37.) A clerk in the land office at Washington can not reinstate a right, that may have been lost by the *laches* of the party claiming, by signing the President's name to a document called a patent. (Biddle v. Milton, 13 Mo. 535 ; 12 Mo. 184 ; 13 Mo. 335.) In actions of ejectment under our statute concerning New Madrid locations, a court of law has the same power as a court of equity with reference to the title. (Mitchell et al. v. Twiker, 10

Mo. 260.) From the moment of the return of the survey to the surveyor general's office, plaintiff had a right to assert his claim to the possession of the land in controversy; and having failed to do so, is barred by the statute of limitation. (Cabanné v. Lindell, 12 Mo. 184; see Morton v. Blankenship, 5 Mo. 346.)

IV. The plea of the statute of limitations in this case does not interfere with the primary disposal of the public soil of the United States. (Stephenson v. Smith, 7 Mo. 610.)

V. There are five titles recognized by our statute upon which an action of ejectment may be based, none of which are legal titles according to the common law. (R. C. 1845, p. 440.) This being the law, the defendant's answer puts in issue the plaintiff's right to recover, and the defendant may give in evidence any matter in bar of the action. (R. C. 1845, p. 441.) The defendant is the legal representative of William Cox to all intents and purposes. Defendant bought the land for taxes due the state, and thereby became the legal representative of the one who owned the land at the time the taxes became due. The patent is to William Cox or his legal representatives; the defendant is his legal representative; therefore the patent issued for his benefit. It makes no difference whether defendant became the legal representative of William Cox by his consent or by operation of law. We have not been able to find a case, where an action of ejectment could be maintained upon an *inchoate* title, that the courts have held that the actual fee must be in the plaintiff before he was bound to assert his right. In all the states and in cases coming from those states where such doctrine has been held, the common law prevailed; *id est*, the party plaintiff must recover upon a strict legal title. In this state it is not so. (See McCoy v. Dickinson College, 4 Serg. & R. 302; Cabanné v. Lindell, 12 Mo. 186; Bryan v. Wear & Hickman, 4 Mo. 106.)

*Adams*, for defendants in error.

I. The legal title remained in the United States till the emanation of the patent in 1855, and the statute of limitations

as against that title did not commence running till the patent was issued. (Landes et al. v. Perkins, 12 Mo. 257 ; Lindsay v. Miller, 6 Pet. 666 ; 16 Ohio, 34 ; Chiles v. Calk, 4 Bibb, 554 ; 20 Mo. 110, 431 ; West v. Cochran, 17 How. 414.) Although the plaintiffs, under the statute laws of Missouri, might have brought an action of ejectment on their New Madrid location, yet they were not bound to do so, and might rest satisfied till the whole title passed from the United States by the patent. To hold that the statute could be pleaded so as to bar a title before it passed from the United States would be interfering with the primary disposal of the soil by the United States, and in direct conflict with the constitution of this state and of the United States. (See Const. of Missouri, art. 10, sec. 1, and Const. of U. S., art. 4, sec. 3.) The question is not, whether, if an action had been brought on the *inchoate* title before the emanation of the patent, the statute could have been pleaded, but whether the title vested by the patent can at law be defeated by the running of the statute before the patent issued. But even in an action on the *inchoate* equitable title, the statute would not commence till the survey was approved by the surveyor general and returned to the recorder of land titles ; and the survey in this case was not approved or• returned to the recorder of land titles till 1854. (Cabanné v. Lindell, 12 Mo. 184.)

II. The respondents showed themselves entitled to five hundred arpens of Cox's head-right. In regard to two hundred arpens there can be no dispute, as their ancestors held a direct conveyance for that amount from Robertson, sr., and he from Cox ; and being thus entitled to a part of the head-right, they were legal representatives of Cox within the meaning of the patent issued by the United States ; and, although they may be tenants in common with others, yet, as against the defendant, who is a stranger and intruder, they are entitled to recover the whole land.

III. There is no pretence that the defendant is in anywise connected with the title derived from the United States by contract, purchase or otherwise, so as to authorize him to

come into a court of equity to compel a conveyance of the legal title, and for this purpose, as one of the grounds in support of his equity, to rely upon his great length of possession and adverse enjoyment as evidence of such purchase. If such a defence was relied on, it would have to be set up in the answer with the same particularity as would have been required under the former practice in a bill in chancery. (See Carman v. Johnson, 20 Mo. 110 ; Magwire v. Price, 20 Mo. 431 ; West v. Cochran, 17 How. 414.)

RICHARDSON, Judge, delivered the opinion of the court.

It appears from the record that a New Madrid certificate, No. 453, was issued by the recorder October 6th, 1818—by which William Cox, or his legal representatives, was entitled to locate six hundred and forty acres on any of the public lands, the sale of which was authorized by law, in lieu of a like quantity in New Madrid county which had been injured by earthquakes—and was located the day it was issued on section 9, township 48, range 16 west.

As a preliminary to the other questions in the case, it is proper, first, to determine, as a matter of fact, when the plat and survey of the location were returned to the recorder. The record further shows that in May, 1854, a plat and description of the survey of this location were made in the office of the surveyor of Illinois and Missouri, without an actual survey on the ground, but from materials which had been in the office, and no doubt in the land department at Washington, for more than thirty years ; for, in the caption to the plat, it is recited " that the boundary lines of this tract, as hereby described, are ascertained from the field notes of the subdivision of the survey of the said township surveyed by Wm. V. Rector, deputy surveyor, in the month of January, 1817, under his contract with the surveyor of lands in the United States in the territories of Illinois and Missouri, dated 18th October, 1816, and its connections with the adjoining private claims—Nos. 2807, 2869, and 2878—from the field

notes of the survey thereof as executed in May, 1819." The patent was issued March 6, 1855.

As a part of the plaintiffs' documentary evidence there appears, properly certified, this paper:

A list of *patent* certificates prepared for issue by the recorder of land titles, under the act of Congress of 17th February, 1815 (and the supplementary acts), for the relief of those inhabitants of the county of New Madrid who suffered by earthquakes:

| Date. | No. of P. C. | No. of L. C. | Original Claimant. | Quantity in acres. | To whom delivered. |
|-------|------|------|-----------|------|------|
| 1820. March 9. | 183 | 453 | William Cox. | 640 | |

The fact that a plat of this location was constructed in the surveyor's office at St. Louis in 1854 does not repel the presumption that one had previously been made and returned to the recorder in 1820; and we think this transcript from the recorder's office of the list of patent certificates furnishes conclusive evidence that the plat and survey of this location were returned to him March 9th, 1820, and that the record from which the transcript was taken is of equal dignity to a patent certificate. The second section of the New Madrid act makes it the duty of the principal deputy surveyor of the territory of Missouri to return a plat of each location made to the recorder, together with a notice in writing designating the tract located and the name of the claimant on whose behalf the same was made. This is the only means provided by law by which the recorder officially obtains information that a location has been made; and when he is thus furnished with the necessary information of the lands selected, and the name of the claimant, it is made his duty, by the third section, to give to the party a patent certificate. It appears here that the recorder, on the 9th of March, 1820, prepared a patent certificate for the claimant of this location, which he numbered and entered in the tabular list kept in his office. To suppose, then, that this record was made by the recorder, without the proper information which the law requires to be

in his possession before making it, would require the assumption that he had violated his official duty, and committed a fraud. The usual evidence in actions of ejectment on New Madrid locations, of the return of the survey to the recorder, is the patent certificate, or the extract, like the one in this case, from the tabular list kept in the recorder's office; and we are unwilling to deviate from a rule of evidence so long acquiesced in.

Assuming, then, that the survey was returned to the recorder in 1820, the inquiry arises, as a starting point for the running of the statute of limitations, whether it began in 1820, or at the emanation of the patent in 1855. Our statute permits an action of ejectment to be maintained on a New Madrid location, and as a general rule limitation will begin to run from the time a cause of action accrues, and a suit may be maintained. The Supreme Court of the United States decided, in Bagnell v. Broderick, 13 Pet. 448, and Barry v. Gamble, 3 How. 51, that the land was appropriated and severed from the public domain when the plat and survey of location were returned to the recorder, and afterwards in Lessieurs v. Price, 12 How. 74, reasserted the doctrine and held that when the return was made the applicant became entitled to the land, and the land which he had abandoned vested in the United States. In Cabanné v. Lindell, 12 Mo. 184, the question was whether the limitation began from the time of notice of the location to the surveyor or from the time of the return of the survey to the recorder; and on the ground that the title did not vest, according to the authority of Bagnelle v. Broderick, until the survey was returned, it was decided that limitation did not commence until that time. Since then the question has been at rest, and it has been understood as the law of the state that limitation begins to run on a New Madrid location in favor of an adverse possession when the survey has been returned to the recorder. In many cases patents for New Madrid locations have not yet been issued, and if parties claiming under them do not apply for them they never will be issued; and it would be singular if

in such cases there is no limitation, though there is title and a right of action. No case has been decided by this court, of which we are aware, that gives color to the idea that the statute of limitations is suspended in favor of a New Madrid location until the patent issues, and we do not think that the plaintiffs' argument is supported by the cases to which we have been referred. In Chiles v. Calk, 4 Bibb, 554, it does not appear that the plaintiff had a right of action until the patent issued. The plaintiff, in Lindsay v. Miller's Lessee, 6 Pet. 666, exhibited a patent dated in 1824, which was founded on an entry and survey executed the same year, and he had no cause of action until that time; and though the defendant had been in posssession for more than thirty years under an older patent from the state of Virginia, it was decided that his patent was void, and that the statute of limitation did not run against the state, and therefore did not begin to run against the plaintiff until he had a right of action. The argument in Duke v. Thompson, 16 Ohio, 34, puts the case on the ground that no action at law or equity could be maintained upon an entry under a Virginia military warrant until a patent had been issued; and it was observed by the judge who delivered the opinion of the court, that " it was not until 1841 (the time the patent issued) that the complainant could prosecute the claim." Cochran v. West, 17 How. 414, does not relate to this subject; it only decides that a confirmation under the act of 1807, to be designated by a survey, attached to no land until the survey was made.

It is insisted that as the fee remained in the United States until the patent was issued in 1855, it would be an interference with the primary disposal of the soil to apply the statute of limitations to the plaintiffs' title before the emanation of the patent. (Const. of Mo. art. 10, sec. 1.) The provision in our constitution which denies to the general assembly the right to interfere with the primary disposal of the soil by the United States was suggested by the proviso in the fourth section of the act of Congress authorizing the people of the territory of Missouri to form a constitution and state govern-

ment. This act was preparatory to the withdrawal of the sovereignty of the United States from the territory of Missouri, and to the inauguration of a new sovereign by the establishment of the state government; and as the public domain, by a principle of national law, would otherwise have passed to the local sovereign, we suppose the object of this compact was to save the public lands from the operation of this principle, and to preserve to the United States their proprietary interest in them, with full power to dispose of them as they thought proper. This state, with full recognition of the United States as the fountain of title to the public lands, has the right to preserve the peace among her own citizens who occupy them, and to adjust in her own courts conflicting interests and disputes that arise between claimants who derive title from the federal government; and, regarding the United States as having the absolute and primary right to dispose of the soil, our courts have asserted the undoubted right to declare the holder of a patent obtained by fraud a trustee for the owner of the equitable title and thus cause a patent issued to one person to enure to the benefit of another. (Smith v. Stephenson, 7 Mo. 610; Carman v. Johnson, 20 Mo. 100.) It was decided in Carroll v. Safford, 3 How. 441, that land entered, for which the purchaser held only the receiver's certificate, was liable to be taxed and sold by the state for the public dues on it, though the patent had not been obtained; and that the exercise of this power by the state was not "an interference with the primary disposal of the soil." In such case the purchaser has not the legal title, but, having made the entry and paid for it, the United States could no more sell it to another than if the patent had been issued, and the purchaser at the tax sale would acquire the equities of the owner, and the patent, when issued, would enure to his benefit.

There is no pretence that the plaintiffs had title to all the land sued for and recovered. At most they only made a *prima facie* case for an undivided interest, and yet, under the instructions given and refused, the court held, if they could

recover at all, they were entitled to recover the whole. It was formerly held, that a plaintiff in ejectment could not recover an undivided part when he claimed an entirety; (Carroll v. Norwood, 5 Har. & J. 155;) but this strictness no longer prevails; and though a plaintiff may recover less than he claims, it is apprehended that he can not recover more than he shows title to. But it is said that though this is the general rule, there is a difference when the defendant is a stranger to the plaintiff's title, and that as to him one tenant in common, though entitled to only a part, may recover the whole, and when he is put into possession will hold for the other tenants in common as well as for himself. At common law tenants in common could not recover on a joint demise, and "as the right of possession, which depends on title, is several, a recovery by one will restore him only a moiety of the possession against the disseisor, who will hold the other moiety with him in common." Our statute permits tenants in common to join, but there is no use in this if one can recover for the others; and if this is the law, A. may recover for B., though B. could not recover for himself. It often happens that one tenant in common is barred by limitation when the other is not, and a title may be acquired by adverse possession. (Biddle v. Mellore, 13 Mo. 335.) The defendant will prevail against one when he can not against the other. But this would amount to nothing if the plaintiff not barred and claiming but a fractional interest can recover for the other against whom the defendant might have title by lapse of time. The plaintiff who claims and recovers the entirety, though entitled only to an undivided interest, will not generally, after he has been put into possession of the whole, share his good fortune with his co-tenants, especially if they are barred by limitation; and the practical result will be that he will keep all, though he has been permitted to recover on their account.

Judge Napton concurring, the judgment will be reversed, and the cause remanded.