PETER H. HOLME, Plaintiff in Error, *v.* HENRY STRAUTMAN, Defendant in Error.

1. *Conveyance—Description.*—Where the words employed to describe a tract of land fail to do so in such a manner as to show what tract was intended, the deed will be void for " uncertainty of description."

2. *Ejectment—New Madrid Location.*—(Per Bates, C. J.) The certificate of right to locate other lands in lieu of those injured by earthquakes, under the act of Congress of February 17, 1815, although issued by the Recorder of land titles in the name of the legal representatives of the original confirmee or grantee under the acts of Congress, enures to the benefit of the persons who presented the claim to the recorder, and if necessary the legal title will be passed to them.

*Error to St. Louis Land Court.*

Ejectment brought by the plaintiff in error to recover possession of land in the vicinity of the city of St. Louis. James Y. O'Carroll, who had a wife and three children, was settled upon a portion of the domain in the district of New Madrid, prior to the 20th of December, 1803, by permission of the proper Spanish officer, inhabiting and cultivating the land. On the 29th day of November, 1805, O'Carroll, in consideration of four hundred dollars, conveyed to George Ruddell " all that tract, parcel or parcels of land situated near the Mississippi, about two miles above the village of Little Prairie, it being the settlement-right of the said O'Carroll under the second section of the law of Congress, within the District of Louisiana, and the territory of Orleans, and every part, parcel, acre, or arpent thereof, which may be confirmed to him, the said O'Carroll, by the commissioners of the United States, or by the United States in Congress assembled, are hereby bargained and sold to the said George Ruddell, and all the rights, interest, and estate of him, the said O'Carroll, is hereby bargained, sold and transferred to him, the said George Ruddell, forever."

This deed was acknowledged on the day of its date, (November 29, 1805,) and recorded March 18, 1809. On the 14th day of February, 1806, M. Amoureux, who calls him-

self deputy surveyor for the district of New Madrid, issued a plat of survey, which he certifies "represents 1,000 arpens of land, situated in the district of New Madrid, surveyed by him at the request of James Y. O'Carroll, who claims the same as his settlement-right by virtue of the second section of the act of Congress, respecting such claims, passed on the second day of last March." This survey was recorded by Antoine Soulard, Surveyor General, February 27, 1806. A claim was filed with the Recorder of land titles, in the name of James O'Carroll, for 1,000 arpens, situated in the district of New Madrid, under the second section of the act of Congress, and the plat of survey made by Amoureux is filed with the notice of claim.

This claim was first considered by the board on the 13th of March, 1806, and upon the testimony of George Ruddell proving the inhabitation and cultivation, the board decided to grant the claimant 1,000 arpens of land, provided so much be found vacant at the place.

Afterwards, on the 10th of July, 1809, the board took up the case again, and received further testimony; and on the 14th of December, 1810, the board decided to grant to O'Carroll three hundred and fifty arpens of land, and ordered that the same be surveyed as nearly in a square as may be, and so as to include his improvements. The commissioners issued their certificate, No. 1040, on the 20th of June, 1811, for the three hundred and fifty arpens, to be surveyed in the manner directed in the confirmation. The survey under this confirmation and certificate was not given in evidence.

Under the act of February 17, 1815, for the relief of the inhabitants of the county of New Madrid who suffered by earthquakes, the Recorder took evidence of the injury to the lands of O'Carroll, and in the book containing the testimony an entry appears of November 10, 1815, stating that James Y. O'Carroll claims 640 acres of land, No. 1040 of commissioners' certificates, and extended by recorder, with the evidence of a witness that this tract was materially injured by

earthquakes. By extracts from certain lists remaining in the recorder's office, it appears that New Madrid certificate No. 150, in the name of James Y. O'Carroll, for 640 acres, was issued under date of November 30, 1815, and that a relinquishment of the injured land to the amount of the same number of acres was made by James Tanner, legal representative of James Y. O'Carroll, and that a patent certificate was issued on the 16th of August, 1841, upon survey No. 2498, for 640 acres, in the name of O'Carroll, which was delivered to William Milburn.

Copies of the original New Madrid certificate for 640 acres in favor of James Y. O'Carroll or his legal representatives, and of the application of Christian Wilt, as the legal representative of James Y. O'Carroll, for the location of 640 acres under said certificate, and of survey No. 2498, were given in evidence by the plaintiff.

There was also given in evidence by plaintiff, an extract from the opinion of the Recorder of land titles, showing his action upon the claim of James Y. O'Carroll, by which it appears that O'Carroll claimed 1,000 arpens, and that there was a commissioners' certificate (No. 1040) for 350 arpens; that the land was surveyed, and situated on the Mississippi, in New Madrid, and that 640 acres were granted. This extract is taken from the books kept in the recorder's office, which contain the report of claims made by him to Congress, and which claims were afterwards confirmed by Congress by the act of 29th April, 1816.

A copy of a deed from George Ruddell to George Dameron was given in evidence, dated November 1, 1815. (See opinion.) The evidence in the cause showed, that George Dameron lived upon the land which he acquired from Ruddell by the deed before stated, and which some of the witnesses say was a tract of 200 arpens, being part of the settlement right of James Y. O'Carroll. Dameron died in possession of that land in 1816. The plaintiff claims an interest in the land in St. Louis county, under the heirs of George Dameron, upon the ground of his interest in the

land in New Madrid which was injured by. earthquakes. The survey of the land in St. Louis, made in locating the New Madrid certificate, was made in April, 1818, upon the application of Christian Wilt, claiming to be the legal representative of O'Carroll, no person set up any title or claim to any part of it under Dameron, either by entry, suit, or by attempting to convey any interest in it, until 1849. Depositions were read to prove who were the heirs of Dameron, and sundry deeds were given in evidence conveying interests of different heirs of Dameron, in the land located in St. Louis county, and tracing the title from them to plaintiff.

Augustus H. Evans, a witness examined by plaintiff, testified that he sold the land in question to Col. William McRee; witness had bought it in 1825 or 1827. Col. McRee was in possession of part of the Jeannette tract, but witness can't say whether he was then in possession of any part of the O'Carroll location. In 1834 or '35, in one of those years, there was an enclosure of 100 acres as he supposed on this tract, and the possession has continued down to this time. In 1830, Col. William McRee had a house on the Jeannette tract. Col. Samuel McRee has since built another house which is on the O'Carroll tract. The defendant then admitted himself to be in possession of a part of the land sued for, as tenant of Mrs. Mary McRee, the part so in his possession being described particularly and admitted to contain two acres and 28-100 of an acre.

When the evidence on the part of the plaintiff was closed, the defendant by his counsel asked the court to give certain instructions to the jury, which were given. (See opinion.) On motion of the plaintiff, the court instructed the jury as follows : " The jury are instructed that if they find from the evidence in the cause, that James Y. O'Carroll made the deed read in evidence to George Ruddell, dated October 29, 1805, the effect of said deed was to vest in said Ruddell all and every part of the tract of land mentioned therein which might be confirmed to said O'Carroll under the laws of the United States."

The plaintiff also asked the court to give the following instructions, which were refused :

2. The jury are instructed, that if they find that said George Ruddell made the deed to George Dameron read in evidence, and dated November 1, 1815, the effect thereof was to convey to said Dameron, his heirs and assigns, 200 arpens of the tract known as James Y. O'Carroll's head-right, and to secure to said Dameron an interest of 200 arpens in any New Madrid certificate which might issue in lieu of said head-right on account of injuries thereto by earthquakes.

3. The jury are instructed that if the New Madrid certificate No. 150, read in evidence by plaintiff, and dated November 30, 1815, issued in lieu of the tract confirmed to James Y. O'Carroll by the confirmation put in evidence by the plaintiff, then any person owning any part of the tract so confirmed at the time of issuing the certificate No. 150 would by the law be entitled to the same interest in the said certificate and land located thereby, which such person had in the land so confirmed.

4. The jury are instructed that the deed from Ruddell to Dameron, if made as aforesaid, was operative to convey to said Dameron 200 arpens of the claim of James Y. O'Carroll as a head-right, and of any land confirmed in satisfaction of said claim, and conferred on said Dameron, his heirs and assigns, the right to re-locate 200 arpens on account of injuries by earthquakes to the land so confirmed, and gave to said Dameron and his heirs 200 arpens of any lands located by virtue of injury by earthquakes to the said land so confirmed to James Y. O'Carroll, as and for his settlement-right, provided the jury believe the terms " head-right" and " settlement-right" meant the same thing, as used in the deeds in evidence.

5. The jury are instructed, that if George Dameron owned 200 arpens of the tract of 640 acres, confirmed to O'Carroll as aforesaid, and died in 1816,—that, by law, the heirs of said George, on his decease, inherited the same from

him, and took the same interest in the New Madrid certificate, issued in lieu thereof, and in the land located thereby, and had the right to sell and convey the same to any person,' and for any consideration they might see fit.

6. And the jury are instructed, that if they find from the evidence that George Dameron died owning 200 arpens of the land so confirmed to O'Carroll, and left heirs, and that prior to the commencement of this suit the right of any of said heirs had been vested in the plaintiff, then said plaintiff is entitled to an interest in the land sued for, to the extent of the rights so vested, provided said defendant was, when sued, in possession of the land sued for, claiming adversely to the plaintiff.

7. There is no evidence in this case that the title to the land in dispute was out of the United States prior to the 16th day of August, 1841, and there is no defence to the plaintiff's action arising out of the statute of limitations, if it appear that he is otherwise entitled to recover.

Upon the action of the court in giving the instructions asked by the defendant, and in refusing those asked by the plaintiff, the plaintiff took a non-suit, and afterwards moved to set the same aside, which motion was overruled, and the case brought up by writ of error.

*Glover & Shepley*, for plaintiff in error.

No brief on file.

*H. R. Gamble* and *C. Gibson*, for defendant in error.

The case was submitted upon the brief of C. Gibson and the printed argument of the late H. R. Gamble.

I. The deed from Ruddell to Dameron of November 1, 1815, did not operate to convey an undivided interest or portion of the tract of 640 acres, in lieu of which the New Madrid certificate in favor of O'Carroll or his legal representatives was issued.

II. In the absence of evidence as to what land had been sold to Rogerson, it cannot be determined what portion of

the original tract owned by O'Carroll was conveyed by Ruddell to Dameron.

III. There is no evidence that the land described in the deed of Ruddell to Dameron was any part of the tract confirmed to O'Carroll.

IV. As Dameron continued to occupy the land at New Madrid until after the issue of the certificate, and never relinquished such land to the United States, nor did he nor any one claiming under him ever lay claim to the *locus in quo* until the commencement of this suit, the plaintiff is not entitled now to recover this land.

V. The person who presented the claim to the Recorder of land itles, and received from him the New Madrid certificate and relinquished the land injured by earthquakes to the United States, is the person to whose benefit the certificate issued enured, and is the only person entitled to the land located by the New Madrid certificate. (Act February 17, 1815; Lessieur v. Price, 12 How. 78; Bagnall v. Broderick, 13 Pet. 447; Bryan v. Wear et al., 4 Mo. 106; S. C. 5 Mo. 147; Stuart v. Rector, 1 Mo. 361; Kirk v. Green's Heirs, 10 Mo. 252; Page v. Hill, 11 Mo. 165; Jœckel v. Easton, 11 Mo. 124; Cabanné v. Lindell, 12 Mo. 184; Mitchell v. Parker, 25 Mo. 31.)

VI. Neither Dameron nor his heirs ever asserted any claim to locate other land within the time allowed by the acts of Congress of April 9, 1818, and April 26, 1822, which latter act required all warrants to be located within one year after the passage of the act. (Easton v. Salisbury, 21 How. 426.)

VII. No patent having issued, the plaintiffs have no legal title. (Holme v. Fenn, 21 How. 481.)

VIII. The plaintiffs are barred by lapse of time. (Sto. Eq., §§ 1520, 1522; Pratt v. Vatter et al., 9 Pet. 405; Elmendorf v. Taylor, 10 Wheat. 132.)

BATES, Judge, delivered the opinion of the court.

This is an action of ejectment for land in St. Louis, which is a portion of a tract located under a New Madrid certifi-

cate in the name of James Y. O'Carroll or his legal representatives. The plaintiff, in order to show title in himself, gave in evidence a deed from James Y. O'Carroll to George Ruddell, dated the 29th of November, 1805, of the land in New Madrid described as follows: "all that tract, parcel or parcels of land situated near the Mississippi, about two miles above the village of the Little Prairie, it being the settlement right of the said James Young O'Carroll, under the second section of the law of Congress, within the District of Louisiana and the territory of Orleans, and every part, parcel, acre or arpent thereof which may be confirmed to him, the said James Young O'Carroll, by the commissioners of the United States or by the United States in Congress assembled."

The plaintiff then gave in evidence a deed from Ruddell to Dameron (under whose heirs the plaintiff claimed) as follows: "This indenture, made this first day of November, A. D. eighteen hundred and fifteen, by and between George Ruddell of the county of Lawrence and Territory of Missouri, of the one part, and George Dameron of the county of New Madrid and territory aforesaid, of the other part, witnesseth, that the said George Ruddell for and in consideration of the sum of four hundred dollars, current money of the United States, to him in hand paid by the said George Dameron at or before the delivery of these presents, the receipt whereof is hereby acknowledged, he this day has granted, bargained, and sold, and by these presents do hereby grant, bargain and sell unto him the said George Dameron, his heirs, executors, administrators or assigns forever, a certain part of a tract or parcel of land of two hundred arpens, situated in the Little Prairie township, lying and being in the county of New Madrid and territory of Missouri, and about two and a half miles from the village of Little Prairie, and adjoining part of the same tract sold by the said Ruddell to a certain William Rogerson, the lower side down a *byo*, and known by the name of James Young O'Carroll's head-right, which said tract of land has been materially injured by

earthquakes; and, whereas, under the act of Congress of the United States of the 17th February, 1815, it is provided that all and every person or persons owning land in the county of New Madrid, in the territory of Missouri, thus injured by earthquakes, shall be entitled to the right and privilege to locate certain quantities of public lands, which they shall hold in lieu of their injured lands, which injured lands shall revert to and become absolutely vested in the United States, all the rights, privileges and benefits which are given to the said George Ruddell by the said act of Congress in virtue of the aforesaid tract of land are hereby sold and transferred by the said George Ruddell to the said George Dameron, his heirs and assigns forever," &c.

The court instructed the jury as follows:

1. The deed of the first of November, 1815, from George Ruddell to George Dameron, does not operate to convey an undivided portion of the tract of 640 acres, in lieu of which New Madrid certificate No. 150, in favor of James Y. O'Carroll, or his legal representatives, was issued.

2. There is no evidence that the land described or conveyed by the deed of the 1st November, 1815, from George Ruddell to George Dameron, is any land of the tract of 640 acres confirmed to James Y. O'Carroll, in lieu of which the certificate No. 150 was issued, so as to entitle the plaintiff claiming under said deed to any portion of the land located by virtue of said certificate.

3. If the jury find that George Dameron, the grantee in the deed of 1st November, 1815, occupied and possessed the tract or parcel of land purporting to be conveyed by said deed at the time when the New Madrid certificate No. 150 was issued, and afterwards continued to occupy the same land and claiming it as his own; that he died in possession thereof as his own; that neither he or any person claiming under him relinquished the said land to the United States, nor made any claim to the said certificate No. 150, or to the land located by virtue thereof, for thirty years after the said certificate was issued, and that the defendants and those un-

der whom they claim have been in the uninterrupted, open and notorious possession of the land located by virtue of said certificate for more than twenty-five years before the commencement of this suit, claiming the same as their own property during all this time, the plaintiffs are not entitled to recover."

Under these instructions the plaintiff took a non-suit, and has brought the case to this court by writ of error.

The second instruction was properly given; whilst the deed evidently intended to convey a definite tract of land, the words employed to describe the tract fail to do so in such manner as to make it certain what tract was intended. That it is a part of a tract of 200 arpens is clear, but what part does not appear; that another part of the same tract had been previously sold to Rogerson is also clear, but what part that was does not appear; nor does it appear whether or not the part intended by this deed was the whole remainder of the tract after satisfying the deed to Rogerson. It also appears that the tract intended to be conveyed adjoined that sold to Rogerson; but as Rogerson's tract is in no manner located, that fact adds nothing to the description. It also appears that the lower side (of something) was down a bayou. If these words are understood to apply to the tract intended to be conveyed by that deed (of which there may be doubt), and it be assumed that the bayou was a known place, and it be understood that the words meant that the bayou was a boundary of the tract, yet as the other boundaries are not known, it amounts to nothing. Again, it appears that some tract was " known by the name of the James Young O'Carroll's head-right." Whether this refers to the tract intended to be conveyed, the Rogerson tract, or the whole 200 arpent tract, of which they were parts, is not clear; nor is any evidence given to show what was known by the name of James Young O'Carroll's head-right; nor does the condition of the O'Carroll claim, at the date of that deed, make any clearer the reference to his head-right. His claim was then for one thousand arpens, of which there had been confirmed three·

hundred and fifty, to be surveyed so as to include his improvements, and which confirmation was subsequently extended to six hundred and forty acres. So that the term head-right may have referred to the tract of 1,000 arpens, that of 350 arpens, or (upon the idea that the parties anticipated the subsequent confirmation) to that of 640 acres, all of which differ in quantity from the tract of 200 arpens, of which the tract intended to be conveyed was a part.

With this great uncertainty in the description contained in the deed, and the lack of other evidence to give certainty to the descriptive words used, the instruction given was a proper expression of the law applicable to the case.

Under this instruction it was impossible for the plaintiff to recover, and Judges Bay and Dryden think that the approval of them makes an affirmance of the judgment of the lower court proper, and that it is unnecessary to give any opinion on the other questions made in the case.

I think that it is proper to decide upon other questions made by the record, and therefore I add my individual opinion upon them.

By the first section of the act of Congress for the relief of the inhabitants of the late county of New Madrid, in the Missouri territory, who suffered by earthquakes, approved February 17, 1815, it was enacted in Sec. 1—" That any person or persons in the county of New Madrid, in the Missouri territory, and whose lands have been materially injured by earthquakes, shall be and they are hereby authorized to locate the like quantity of land on any of the public lands of the said territory, the sale of which is authorized by law; provided, that in every case where such location shall be made according to the provisions of this act, the title of the person or persons to the land injured as aforesaid shall revert to and become absolutely vested in the United States."

The Supreme Court of the United States has held that this act is not a pure donation on the part of the government, but was a proffered barter or exchange of lands. (Lessieur v. Price, 12 How. 78.)

The second and third sections of the act provide how the proffered exchanges were to be perfected. They are as follows:

"Sec. 2. That whenever it shall appear to the Recorder of land titles for the Territory of Missouri, by the oath or affirmation of a competent witness or witnesses, that any person or persons are entitled to a tract or tracts of land under the provisions of this act, it shall be the duty of the said Recorder to issue a certificate thereof to the claimant or claimants; and upon such certificate being issued and the location made, on the application of the claimants, by the principal deputy surveyor for said territory, or under his direction, whose duty it shall be to cause a survey thereof to be made, and to return a plat of each location made to the said Recorder, together with a notice in writing, designating the tract or tracts thus located, and the name of the claimant on whose behalf the same shall be made; which notice and plat the said Recorder shall cause to be recorded in his office, and shall receive from the claimant for his services on each claim the sum of," &c.

"Sec. 3. That it shall be the duty of the Recorder of land titles to transmit a report of the claims allowed and locations made under this act to the commissioner of the General Land Office, and shall deliver to the party a certificate stating the circumstances of the case, and that he is entitled to a patent for the tract therein designated, which certificate shall be filed with the said Recorder within twelve months after date, and the Recorder shall thereupon issue a certificate in favor of the party; which certificate, being transmitted to the commissioner of the General Land Office, shall entitle the party to a patent to be issued in like manner as is provided by law for other public lands of the United States."

The second section contemplates that persons who may be entitled to accept the offer made by the government to exchange other lands for those injured by earthquakes, shall claim the benefit of the act before the Recorder; and that the Recorder shall, when a proper case is made, issue to the

claimant a certificate that such claimant is entitled to a tract of land under the provisions of the act. And it is obvious, that in no case can the Recorder issue such certificate unless there be a claimant entitled to receive the same. The issue of the certificate is the first step in a proceeding by which the title to land is to pass from the United States to the claimant in lieu of land (injured by earthquakes), the title to which shall pass from the claimant to the United States. Necessarily, therefore, the claimant must be before the Recorder, and must be held and adjudged by the Recorder to be a person entitled to a tract of land under the provisions of the act; that is, to be a person owning land in the county of New Madrid, and whose land has been materially injured by earthquakes. The issue of the certificate by the Recorder is therefore, for all the purposes of the exchange, a decision by the proper officer of the government, not only that a particular tract of land in New Madrid county had been materially injured by earthquakes, but also that the claimant was the owner of the injured land, and therefore entitled to another tract of land under the provisions of the act.

So far all seems clear enough; but difficulties are created by the mode adopted by the Recorder for the performance of his duties under the act. Instead of issuing to the claimants, specially by name, certificates that they were entitled to tracts of land under the provisions of the act, as required by the act, he (having in his office the evidence of the original confirmations) granted certificates as to the whole original tracts, and in the name of the original confirmees or their legal representatives, without regard to any subdivisions of the original tract, or to any transfer of title by conveyance or descent of the whole or any part thereof. He also, however, required the claimant, to whom the certificate was delivered, to execute a relinquishment to the United States of the injured land in New Madrid, which relinquishment was not required by the act, and its execution probably serves no other purpose than to indicate conclusively who

was the claimant before the Recorder. In acting upon the subject, the Recorder evidently considered that the title to the injured land should pass from the claimant to the United States, at the time he issued the certificate under which a location of other lands in lieu of the injured lands might be made. This opinion of the Recorder as to the time when the title passed to the United States was not unreasonable; but this court has in several instances held that the injured land reverted to the United States when the location was made under the certificate. (Wear & Hickman v. Bryant, 5 Mo. 147; Jœckel v. Easton, 11 Mo. 124; Page v. Hill, 11 Mo. 165.) Certainly when the location was made under the certificate, the title to the injured land passed to the United States, if it had not done so before, and then the exchange became complete—the evidence of title in fee to the located land, by the issuing of a patent by the United States, following the location as a matter of course.

But bearing in mind that the act of Congress is only an offer of a land proprietor to make an exchange of lands, and that the exchange can only be made perfect by the acceptance of the offer by a person qualified to make the contract (by the ownership of land which had been injured by earthquakes), it must be determined in this case what person or persons did make the contract of exchange, and did exchange lands with the United States, or, at least, whether Dameron, under whom the plaintiff claims, was one of the contracting parties.

In this case, the record does not show when the location was made, but it does show that the patent certificate was issued on the 16th of August, 1841, and consequently the location was made at or before that time. Up to that time, when the exchange became perfect, neither Dameron nor any of his representatives had, in any manner whatever, accepted or in any way indicated any intention to accept the offer made by the United States to exchange lands; but, for all that appears, they may have retained the land in New Madrid and continued in the use and enjoyment of it. It is well

known, as stated by the practical as well as learned Judge Catron, in the case of Lessieur v. Price, that much of the injured land in New Madrid is of great intrinsic value (or was so before the rebellion, more disastrous in its effects than earthquakes, brought ruin upon the proprietors or possessors); and as the act of Congress did not compel any proprietor to accept the offer of an exchange, it is not to be presumed that he did so merely because some other person, wrongfully claiming his land, has attempted to transfer it to another person (the United States) in exchange for lands elsewhere. The act of such other person cannot divest him of his land In New Madrid. It was, as to him, merely and absolutely null and void. He is not affected by it, either injuriously or beneficially, and therefore of necessary consequence had no right, at his option and at any future time, to adopt the acts of the other person and claim the benefit of the exchange made by such person.

The obvious intention of the act of Congress was to grant relief to sufferers by the earthquakes. If an owner of land in New Madrid which was injured by earthquakes chose to decline the relief offered, he was at full liberty to do so by simply abstaining from applying for such relief, in the mode directed by the act. The relief was offered to such as were sufferers, and granted to such sufferers as should be claimants according to the second section of the act. The record does not show that Dameron was a claimant. Who, then, was the claimant? Who was the person with whom the Recorder dealt as the person contracting with the United States in the exchange of lands? This is a question of fact, but depending upon matter of record and determinable by the court.

The certificate of the Recorder is as follows:

"Office of the Recorder of land titles, St. Louis, November 30, 1815. I certify that a tract of 640 acres of land on the Mississippi, in the county of New Madrid, which appears from the books of this office to be owned by James Y. O'Carroll, has been materially injured by earthquakes, and that in

conformity to the provisions of the act of Congress of the 17th February, 1815, the said James Y. O'Carroll, or his legal representatives, is entitled to locate 640 acres on any of the public lands of the Territory of Missouri, the sale of which is authorized by law. Frederick Bates."

It appears also from the records of the Recorder's office given in evidence, that this certificate was delivered to James Tanner, and that James Tanner, as legal representative of O'Carroll, executed a relinquishment to the United States of the land in New Madrid. The Recorder thus recognized Tanner as the legal representative of O'Carroll, and the claimant of relief on account of the injury done to the O'Carroll tract of land.

It may well be that Tanner was not the owner of the O'Carroll tract, but he was recognized as the owner by the officer of the United States, whose duty it was to determine who were the owners of injured lands, and as such entitled to relief; and his relinquishment of the injured land accepted by the officer. These relinquishments were not required by law, but the Recorder did require them in all cases, and his acceptance of the relinquishment from Tanner is conclusive that he regarded Tanner as the owner of the land. If Tanner was not in truth the owner of the land, the true owner was not injured. He was deprived neither of his right to the land in New Madrid, nor of his right to claim before the Recorder a certificate entitling him to other land in lieu thereof; and although it may be that (if Tanner was not the owner of the New Madrid land) the certificate and subsequent location were voidable by the United States, yet until so avoided, they cannot be impeached by third persons. (Mitchell v. Parker, 25 Mo. 32.)

Tanner being the person with whom the exchange was made, the location was for him or his representatives, and the patent when issued will enure to their benefit, and if necessary the legal title be passed to them by a judgment. (Smith v. Stevenson, 7 Mo. 610; Carman v. Johnson, 20 Mo. 108; Gray v. Givens, 26 Mo. 302; Carroll v. Safford,

3 How. 441.) In the view taken of the subject, it is not necessary to consider whether the acts of Congress of April 9, 1818, and April 26, 1822, limiting the time within which claims for relief under the act of February 17, 1815, and the time within which locations should be made, have any application to this case.

It is contended by the plaintiff that the courts of this State have uniformly held, that the certificates of the Recorder (being to the original confirmee or his legal representatives) enured to the owners of the land in New Madrid, whether heirs or assigns, and that to change the rule now would produce infinite mischief. Having an earnest desire to stand by the decisions, particularly where it is probable that rights have been vested under them, the former decisions have been very carefully examined, together with decisions by the Supreme Court of the United States, which are the highest authority.

There are but two cases in which this court has directly acted upon this question. The first case is that of Wear & Hickman v. Bryant, 5 Mo. 147, decided at the May term, 1838.

In that case the certificate was to Louis St. Aubin, or his legal representatives, and an instruction was asked that the jury must be satisfied that the certificate was procured and the location made by the agency and consent of St. Aubin, or those claiming under him. The instruction was given with this explanation : "Although the certificate was granted and the location made without the consent of those under whom the plaintiff claims, yet if they afterwards consented, it is sufficient. It is the same, in point of legal effect, as if they had consented at the time, and that there is evidence of such subsequent consent." Judge Tompkins, who delivered the opinion of the court, sustained the propriety of this explanation of the instruction, upon the ground that the certificate was a grant to St. Aubin, or such persons claiming under him as might be the owners of the land. Judge McGirk concurred in affirming the judgment, but said " I am not well satisfied ;" and Judge Edwards, who, upon

another point was of opinion that the judgment ought to be reversed, said as to this point, "my opinion is not so clear, but as at present advised, I concur."

The other case is that of the heirs of Kirk v. The heirs of Green, 10 Mo. 252, in which the decision in the case of Wear & Hickman v. Bryant, is recited without dissent, though without any express words of approval. (No other cases contain the same point, although it may have been assumed in other cases without any controversy about it.) These cases evidently proceed upon the idea that the relief granted by the government under the act of 1815, was a pure donation, always beneficial to the grantee. Judge Tompkins' opinion clearly manifests this.

In the case of Lessieur v. Price, 12 How. 60, the Supreme Court of the United States held that the act of Congress, instead of being a pure donation on the part of the government, was a proffered barter or exchange of lands by legislative enactment, and that the owners of the land were not compelled to accept the provisions of the act. It also decided that a concurrent vestiture of title must have occurred, and that the injured land must have vested in the United States at the same that title was taken by the new location, and reaffirmed the decision in Bagnell v. Broderick, 13 Pet., and Barry v. Gamble, 3 How., that the location was completed on the return made by the surveyor to the Recorder of land titles.

These positions are wholly inconsistent with the decision in Wear & Hickman v. Bryant; for at the time of the issue of the certificate, there must have been some person accepting the proffered exchange or else it was a nullity; (and this court has held it to be valid, at least until avoided by the United States, the other contracting party.) It takes at least two parties to make an exchange; the exchange was complete when the new location was made; the Government was one of the parties. There was necessarily another, some person who had then voluntarily accepted the offer of the Government—a certain person who had affirmatively

acted in the matter, and not an unascertained and unknown person who was the owner of the land in New Madrid, who had done no act in reference to the matter, and who at his own pleasure might or might not assent to the exchange at any time in the unlimited future.

Other cases decided by this court are also inconsistent with the position taken in Wear & Hickman v. Bryant, and Kirk v. Green, but it is thought unnecessary to refer to them, as those cases are so clearly overruled by the Supreme Court of the United States, which is the highest authority. The case is totally dissimilar from that of a confirmation to a named person, " or his legal representatives," because the confirmations are regarded as pure donations and always beneficial to the grantees, and as requiring no act to be performed by the confirmees in acceptance of the grants, whilst the act for the relief of sufferers by earthquakes in New Madrid required the persons to be benefited by it to do acts which effected transfers to the Government of their land in New Madrid.

The third instruction given for the defendant is supported by this view of the subject, and completely bars the plaintiff of a recovery. I will, therefore, only refer briefly to one other point.

This plaintiff brought a suit at law for the recovery of a portion of the same land in the Circuit Court of the United States and recovered a verdict and judgment, from which an appeal was taken to the Supreme Court of the United States. In that court the judgment was reversed, because no patent having been issued for the land the fee was still in the United States, and an action of ejectment could not be maintained in a court of the United States except upon the legal title. (Fenn v. Holme, 21 How. 481.) Upon the argument of this case, it was claimed the same rule should apply to the State Courts. This is not so. The statute of Missouri authorizes an action of ejectment to be maintained upon " a New Madrid location," and it is the established practice of this court to permit the action to be maintained without the production of the patent. There is no reason to change the prac-

tice. It is not an interference with the primary disposal of the soil by the United States (Gray v. Givens, 26 Mo. 301), nor is it effected by the distinction between practice at law and practice in equity.

Judgment affirmed. Judges Bay and Dryden concur in affirming the judgment.