JOHN W. NOBLE, Appellant, v. JOHN M. CATES and HENRY L. CORNET, Trustees.

Division Two, July 19, 1910.

1. QUIETING TITLE: Pleading Fee Simple: Necessary Proof. It is unnecessary for defendants, in the suit to ascertain and determine the title under Sec. 650, R. S. 1899, to plead a fee simple title in themselves; under that section they can show, as a defense, any title, legal or equitable, vested in themselves, without expressly setting it forth in their answer. But having alleged a fee simple title in themselves, they restricted their defense to an establishment of that title; and if their evidence fails to establish an unbroken chain of title from the Government to themselves (there being no common source of title and no claim of title by limitation), the judgment adjudging them to be "seized of an indefeasible estate in fee simple" cannot stand.

2. ————: ————: Description: Indefinite: Competent Evidence. A concession of 1600 arpens of land made on October 18th, 1800, by the Lieutenant Governor of Upper Louisiana, "to

Noble v. Cates.

be taken between Darnesnes River and the swamp called 'A Bequet' four or five miles northwest of the village of Portage Des Sious," is a very vague and indefinite description; and a deed containing such a description, though it does not describe the south half of the southwest quarter of section 4, township 26, range 7 east, in Wayne county, if otherwise unobjectionable, might be competent as tending to show that the grantor obtained a concession from the Governor of Upper Louisiana, in connection with the act of Congress of a later date confirming said concession and authorizing said grantor, or his legal representatives, to locate other land in Wayne county if the title to the concession failed.

3. ———: ———: **Translation of Deed: Not Sworn To.** A certified copy of an undated and unsworn to translation into English, attached to a deed written in French, dated October 16, 1806, duly acknowledged and recorded in the District of St. Charles in 1807, conveying "a tract of 1600 arpens of land situated in the District of Saint Charles, upon the river Darvene and the marsh called a Bequet", the certified copies of the original in French and of the translation in English not being recorded in Wayne county until 1904, is not admissible in evidence as tending to establish the defense of an indefeasible fee-simple title to lands in Wayne county.

4. **JUDICIAL NOTICE: Location of Lands.** The court will take judicial notice that lands in Wayne county did not in 1806 lie within the territorial limits of the District of St. Charles; and also that lands in Wayne county do not lie within twenty leagues of the city of St. Louis.

5. **GRANT TO LEGAL REPRESENTATIVES: Necessary Evidence.** Where a concession of 1600 arpens of lands was made by the Lieutenant Governor of Upper Louisiana in 1800 to Pepin, and in 1836 Congress confirmed said grant to Pepin, or his legal representatives, and authorized a relocation, and in 1888 the United States patented certain lands in Wayne county to said Pepin, or his legal representatives, it devolves on defendant, who claims the legal title through a deed made by Mullanphy, to show that said Mullanphy was the legal representative of Pepin, since the records of the various Government offices will' disclose who the person was that claimed to be the legal representative of Pepin, when the certificate of relocation was issued, etc.

Appeal from Wayne Circuit Court.—*Hon. E. M. Dearing*, Judge.

REVERSED AND REMANDED.

*James F. Green* for appellant; *John W. Noble*
*pro se.*

(1)   There is no evidence, either admitted or of-
fered, showing who the legal representatives of
Etienne Pepin are.   (2)   There is no will of Jere W.
Clemens shown making the defendants trustees.   (a)
The copy offered in evidence purports to be that of a
will made in California, as to lands in that State,
among others.   It has nothing to authenticate it, no
proof of probate anywhere; nor was any proof offered
at trial.   As an instrument of evidence it was worth-
less and inadmissible.   Barnard v. Bateman, 76 Mo.
414; Charlton v. Brown, 49 Mo. 353; Fenderson v.
Tie & Lumber Co., 104 Mo. App. 294; Keith v. Keith,
97 Mo. 223; Lewis v. St. Louis, 69 Mo. 595; McCormick
v. Sullivant, 10 Wheat. (U. S.) 192; Drake v. Curtis,
88 Mo. 644; Gaines v. Fender, 482 Mo. 497; Stevenson
v. Hancock, 72 Mo. 615; Graven v. Allen, 100 Mo. 293;
2 Rose's Notes on U. S. Rep., p. 413.   No one is charged
with any notice of a will not probated and recorded
in this State.   Van Syckel v. Beam, 110 Mo. 755; Em-
mons v. Gordon, 140 Mo. 490.   (b)  It was a foreign
will as to land in this State, and by statute it could
not be recorded otherwise than by filing an authen-
ticated copy, with probate thereof.   R. S. 1889, secs.
8900-1; R. S. 1899, secs. 4631-2-3-4-5.   (c)  The filing
and recording of this instrument was without author-
ity of any law, and was a void act by the recorder;
and it gains no validity from expiration of time.
Neither was a copy admissible under any recorder's
certificate until the absence of the original was ac-
counted for by proof.   There was no offer to account
for the absence of the original.   R. S. 1889, sec. 2418;
R. S. 1899, sec. 923; Callaway v. Fash, 50 Mo. 420;
Hunt v. Selleck, 118 Mo. 588.   (d)  This copy does not
show the lands in controversy to be embraced within
it, as is necessary to make it admissible in a suit to try

title. Gaines v. Carricker, 50 Mo. 564. (e) There is
no evidence or offer to prove that Jere W. Clemens is
dead. The will purports to be of recent date—1894.
(3) The court erred in admitting the instruments
in the French language, and the several alleged transla-
tions thereof. (a) That purporting to be by Etienne
Pepin, in the French language, is not proven as an
original deed, nor competent evidence. This instru-
ment was not filed in Wayne county until February 4,
1904, nor shown to be such an archive as might be
admissible. R. S. 1889, secs. 4852, 4855 and 4856.
It did not pertain to land in Wayne county but in
St. Charles district, and there was no authority to
either file or record it in Wayne county. It did not
pertain to the land in question. Patterson v. Fagan,
38 Mo. 82. (b) The deed to Mullanphy did not per-
tain to lands in Wayne county, and neither its record
there or elsewhere made it, or a copy, evidence in this
suit. The land described in the deed is not shown to
be the same as that described in the concession, or
that mentioned in the recitals of the patent. (c) Any
entry, location or patent to Pepin's legal representa-
tives did not decide or give notice as to who, individu-
ally, these legal representatives were or might be.
The United States by this form of grant refused to
decide the question as to "legal representatives." (d)
There has at no time been of record any document
showing legally who these "legal representatives"
were or are. It has always been a matter resting *in
pais*, and the acts of the recorder of Wayne county in
filing, recording and certifying as to these papers, are
unauthorized and inadmissible against plaintiff. (e)
Nor is the translation shown in any way to be correct
or by a competent translator. R. S. 1889, sec. 4891.
(f) The original translation was not offered, but only
a certified copy from the recorder's office. This was
not authorized to be recorded and a copy is inadmis-
sible. R. S. 1889, secs. 2418-19-20; R. S. 1899, secs.

923-5; R. S. 1899, secs. 3147-8; Callaway v. Fath, 50 Mo. 420; Hunt v. Selleck, 118 Mo. 588. (g) The affidavit is not proven, and a copy of it is not proof of its being genuine. Statutes last above cited. (h) It does not fall under Sec. 3123, R. S. 1899 (Sec. 40, 1 Wag. Stat. 278), because it is not an instrument affecting real estate, in the sense of that law; and not that in Wayne county. Garnier v. Barry, 28 Mo. 449; Muldron v. Robinson, 58 Mo. 346; Patterson v. Fagan, 38 Mo. 82. (i) There had been no claim under it for ten consecutive years. The evidence is to the contrary. (j) That purporting to be a deed in the French language from Chouteau to Mullanphy was inadmissible for the same reasons and on authorities cited concerning the Etienne Pepin deed. (k) So also, as above pointed out, the translation of that to Mullanphy was inadmissible. Moreover, there is no affidavit to this translation, nor other evidence of its being true or genuine. (4) The plaintiff, and those under whom he claims, established adverse possession under color of title to the day of the trial, and plaintiff was at time of trial in sole possession of the land. (a) This case does not pertain to a common source of title to plaintiff and defendants. The location, entry and patent were offered by plaintiff merely to show the title had passed out of the United States and so the Statute of Limitations could run. The plaintiff claims under that statute; the defendants claim under the entry in 1857 and the patent in 1888. (b) The color of title is indisputable. There is the deed of December 29, 1874, by Allison and wife to Stroud and wife, for a consideration of $1500, duly acknowledged January 22, 1875, describing the land in suit. It is not necessary that a deed be recorded to give color of title. Ozark Co. v. Hays, 105 Mo. 150; Plaster v. Graybeel, 160 Mo. 669. (c) The wife of Stroud died ten or fifteen years before the trial of this case, and the husband thereby became vested

230 Sup—13

with the entire estate. A deed to husband and wife gives an estate by entirety that vests in the survivor of them. Gibson v. Zimmerman, 12 Mo. 385; Hall v. Stephens, 65 Mo. 670; Modrell v. Riddle, 82 Mo. 31; Bains v. Bullock, 129 Mo. 117; Harrison v. McReynolds, 183 Mo. 533. (d) The other undivided interest was conveyed to Stroud by Connor's administrator, but the deed is lost. (e) There is the deed from Stroud to plaintiff below, dated November 1, 1902, and acknowledged the same day, and filed of record November 5, 1902. (5) The possession and use of the land in controversy is proven, and this was so open, continuous, notorious, hostile, exclusive and adverse as to be sufficient to vest title in Stroud, and in his grantee, Noble, with or without any deed to him, or other color of title. (a) Supported by Secs. 6764, 6768 and 6771, R. S. 1889, and secs. 3219, 3223 and 3227, R. S. 1879, as to ten years' adverse possession. (b) Shown by the testimony of Stroud, by deposition taken March 7, 1904, the defendants cross-examining him at length, so that this court on an appeal has every means of judging the testimony as did the trial court. (c) This witness testifies to the use and possession directly and without qualification, for more than twenty-five years, continuously from 1874, and until he deeded to plaintiff, and that plaintiff held it in possession after that. (d) Stroud testifies that he claimed as owner, and had title both from Allison and Connor to show adverse title. Mississippi v. Vowels, 101 Mo. 228; Martin v. Bonsack, 61 Mo. 556. (e) The spring and the pond and the mill were part of one whole mill-scheme, and the spring and the pond were on the land in controversy, and claimed and used by Stroud under Allison deed and Connor deed. There was a road made on it and it was partly fenced, and Stroud cut and sold timber off of it. (6) Title by adverse possession is as good for attack or defense as any title, even one running back to the Government. Scannel v. American

Co., 161 Mo. 618; Kirton v. Bull, 168 Mo. 622. This is the established law of Missouri. This possession need not be the ten years next before the action was begun. Harper v. Morse, 114 Mo. 323. (a) Possession under color of title of a part, in name of the whole, shall be deemed possession of the whole. R. S. 1879, secs. 3219, 3223; R. S. 1889, sec. 6768; R. S. 1899, sec. 4266. Any writing, although invalid and legally conveying no title, or even void, if it purports to convey title will give color of title. Fugate v. Pierce, 49 Mo. 441; Hickman v. Link, 97 Mo. 482; Pharis v. Bayless, 122 Mo. 116. (b) Color may be created by act *in pais,* without writing. Rannells v. Rannells, 52 Mo. 108; Cooper v. Ord, 60 Mo. 420; Hughes v. Israel, 73 Mo. 547. It is not necessary to color to erect a fence or other improvement. Goltermann v. Schiermeyer, 125 Mo. 291; Draper v. Shoot, 25 Mo. 197; Mississippi County v. Vowels, 101 Mo. 229; Leeper v. Baker, 68 Mo. 400; McVey v. Carr, 159 Mo. 648; Hughes v. Israel, 73 Mo. 547. (7) The possession of plaintiff and those under whom he claims are exclusive of all others, whether Connor owned any interest or conveyed to Stroud or not. (a) The testimony of Stroud proved a conveyance from Connor. Tenants in common may hold adversely to each other. Campbell v. Gas Light Co., 84 Mo. 332; Warfield v. Lindell, 30 Mo. 272; Peck v. Lockbridge, 97 Mo. 549; Dunlap v. Griffith, 146 Mo. 283. This is, however, a question not involved in this suit; the defendants do not claim from any supposable co-tenant, and the only supposable co-tenant (Connor) disclaims any interest. Fulkerson v. Mitchell, 82 Mo. 22.

*E. C. Slevin* for respondents.

(1) A claim of fee-simple is futile in the absence of proof of a legal title. Stewart v. Land Co., 200 Mo. 290. (2) A deed has no validity save as to the parties to it, unless it has been recorded. R. S. 1899, sec.

925. (3) To constitute such adverse possession as will bar the title of a legal owner, it must be shown that such possession is hostile or adverse, actual, visible, notorious and exclusive, continuous and under a claim or color of title. 1 Am. and Eng. Ency. Law (2 Ed.), pp. 225, 228; Robinson v. Claggett, 149 Mo. 153; Myers v. Schuchmann, 182 Mo. 159. (4) To bar the true owner of his right to possession of land, the possession of both the occupant and those under whom he claims must be open, notorious, continuous and adverse for the period of ten consecutive years next before the beginning of the suit, under a claim of ownership. Hunnewell v. Burchett, 152 Mo. 611; Hunnewell v. Adams, 153 Mo. 440. (5) The flooding of one's land by the adjoining proprietor's erection of a dam is not adverse to the title or possession of the owner of the flooded lands. Angell on Watercourses, sec. 504; Boston Co. v. Burgin, 114 Mass. 340; 10 Am. and Eng. Ency. Law (2 Ed.), p. 531; Simpson v. Railroad, 145 Mo. 64. (6) Occasional trespass, such as cutting timber, and paying taxes, where the land is not enclosed, will not be sufficient to constitute adverse possession, there being no express notice to the owner by the trespasser of assertion of ownership. Herbst v. Merrifield, 133 Mo. 267; Pharis v. Jones, 122 Mo. 125; Chapman v. Templeton, 53 Mo. 463; Cashman v. Cashman, 123 Mo. 647. (7) The owner should be notified in some manner of the adverse claim. Musick v. Barney, 49 Mo. 458; Fugate v. Pierce, 49 Mo. 447; St. Louis v. Priest, 103 Mo. 652. (8) Adverse possession is a fact which must be proved, and the burden is cast upon him who relies upon it. The proof to sustain it must not be inferential, but must be clear and positive. Huckshorn v. Hartwig, 81 Mo. 648; Wilson v. Taylor, 119 Mo. 626; Herbst v. Merrifield, 133 Mo. 267. (9) Naked possession never ripens into a title; to be effective the possession must be under some claim of right and must be hostile to the title of the true owner. Baher

v. Henderson, 156 Mo. 566; Stevenson v. Black, 168 Mo. 549. (10) The title to lands granted by the Government in lieu of other lands, the title to which is defective, inures to the benefit of the legal representatives of the original grantee; and by "legal representatives" is meant heirs or purchasers. Wear v. Bryant, 5 Mo. 147; Kirk's Heirs v. Heirs of Green, 10 Mo. 252; Holme v. Strautman, 35 Mo. 293; McCamant v. Patterson, 39 Mo. 100; Ewing v. Shannahan, 113 Mo. 194. (11) The legal title cannot be subjected to attack from one who is a stranger to it. Wear v. Bryant, 5 Mo. 166; Mylar v. Hughes, 60 Mo. 116. (12) Objections to the admission of evidence, not made in the trial court, cannot for the first time be urged in the appellate court. Comer v. Stratham, 173 Mo. 246; Cady v. Coates, 101 Mo. App. 147; Weller v. Wagner, 181 Mo. 151; Chapin v. Stahlhuth, 102 Mo. App. 299. (13) The objection to evidence that it is irrelevant, incompetent and immaterial amounts on appeal to no objection at all. Gayle v. Car Co., 177 Mo. 427; Randall v. Railroad, 102 Mo. App. 342.

FOX, J.—This action was instituted in the county of Wayne and was tried at the August term, 1904, of the circuit court of that county. By agreement of parties the issues were submitted to the court, a jury being waived. After hearing the cause the court found the issue for defendants and rendered judgment accordingly, from which judgment plaintiff duly perfected his appeal to this court.

Plaintiff's action is based on section 650, Revised Statutes 1899. He claims the fee-simple title to the south half of southwest quarter of section four, in township 26, range seven east, located in Wayne county, Missouri, not through an unbroken chain of title from the Government, but by such possession for the period of more than ten years as to confer absolute title. His petition is in the ordinary approved form,

with a prayer that the court decree the title in plaintiff and that it determine and ascertain the title and interest in said property of all the parties.

Defendants answered the petition by denying the allegations thereof, except the allegation that they claimed some interest in the property. Further answering and by way of new matter, defendants say that the estate, title and interest, which they claim to have in the real estate described in the petition, is the fee-simple title thereto held by them as trustees, and then prayed the court to ascertain and determine the estate, title and interest of the plaintiff and defendants, respectively, in the said real estate, etc.

By his replication plaintiff denied generally the new matter set up in the answer.

The judgment rendered by the court is responsive to the pleadings, and as to the title to the property adjudges as follows: ''And the court being fully advised in the premises, doth define and adjudge the title, estate and interest, severally, of the respective parties hereto in and to the real property described in the petition, to-wit: The south half of the southwest quarter of section four in township twenty-six and range seven east, situated in the county of Wayne, State of Missouri, to be as follows: the said plaintiff has no title, interest or estate therein whatsoever, either legal or equitable; the said defendants, John M. Cates and Henry L. Cornet, are trustees under the will of Jere W. Clemens, deceased, for the use and benefit of the beneficiaries named in said will, and as such trustees are seized of an indefeasible estate in fee-simple in said real property.''

The evidence as offered by plaintiff was substantially as follows:

1st. He offered a patent from the United States Government to Etienne Pepin, ''or his legal representatives,'' dated in the year 1888, whereby the lands in dispute passed out of the Government.

2nd. A quitclaim deed from J. L. Allison and wife to Willis R. Stroud and wife, dated December 29, 1874; acknowledged January 22, 1875, but which was never recorded, and which deed purports to convey a half interest in the land in dispute.

3rd. A quitclaim deed dated November 1, 1902, from Willis R. Stroud to the plaintiff, John W. Noble, recorded on November 5, 1902, conveying all the lands in dispute.

4th. Evidence tending to show that Willis R. Stroud purchased the one-half interest to the land in controversy from the administrator of Philip A. Connor, but that the deed was never recorded and had been lost and could not be produced.

5th. Also evidence of possession of Stroud for more than ten years before this action was brought. It is not deemed necessary to set out the evidence relating to the possession of plaintiff's grantors, as the determination of the case in this court will not rest on the character of plaintiff's evidence of possession, or whether such possession was sufficient to vest title in him.

The evidence on the part of the defendants was as follows:

1st. Surveyor General's certificate No. 88, under Act of Congress approved July 4, 1836, showing the right to locate by Etienne Pepin, or his legal representatives, of 1361.12 acres of land, in lieu of survey 3277, recorded in Wayne county on February 4, 1904.

2nd. Certificate of land office at Jackson, Missouri, dated August 1, 1857, showing the re-location by Etienne Pepin or his legal representatives of 1361.12 acres, in lieu of survey confirmed by Act of Congress of July 4, 1836, to Etienne Pepin or his legal representatives, and recorded in Wayne county on March 1, 1904.

3rd. Certificate of the register of lands at Ironton, Missouri, dated December 3, 1884, showing that

the lands in question were entered by Etienne Pepin, or legal representatives, on August 1, 1857.

4th. What is called by plaintiff a deed from Etienne Pepin to Pierre Chouteau, dated February 28, 1904, in which is recited a sale by Pepin to Chouteau of "the quantity of 1600 arpens of land superficial measure conformably to a concession, which the said seller obtained from Lieutenant Governor of Upper Louisiana, Don Charles Dehault DeLassus, the 18th of October, 1800, to be taken between the Darnesnes River and the swamp called 'A Béquet' about 4 or 5 miles to the N. W. (Northwest) of a Village Portage Des Sious," recorded in Wayne county, April 9, 1885.

5th. Deed from Pierre Chouteau to John Mullanphy, dated October 16, 1806, recorded in the District of St. Charles, "Book 'A' folios two hundred ninety-three and following," on June 13, 1807, and recorded in Wayne county on February 4, 1904. Both the original in French and a translation in English were offered in evidence. This deed was acknowledged before a common pleas judge in the District of St. Louis. This deed alleges that it was made in the town and District of St. Louis. The property conveyed is thus described : "A tract of sixteen hundred arpens of land *in superficie,* situated in the District of Saint Charles, upon the River Darvene and the marsh called a Begact, as is proven by the concession for the said land granted to Mr. Etienne Pepin by Charles Dehault DeLassus on the eighteenth of October of the year one thousand and eight hundred, and belonging to said Peter Chouteau for having purchased it from the said Etienne Pepin as appears from a deed executed before Mr. Francis Saucier, former commandant of the Portage Des Sious, on the twenty-eight of February, one thousand eight hundred and four, (the said land being not survey), which concession and a copy of the said sale are now delivered to the said John Mullanphy in order that himself, his heirs or assigns, may enjoy the said

land of sixteen hundred arpens, and dispose of it, as a thing to him belonging. It has been agreed upon and covenanted between the parties, that in case the said Mullanphy should be deprived of the possession of the said land hereabove sold, the said Peter Chouteau binds himself to give to the said Mullanphy under the same guaranty as above the same quantity of land, equally good and timbered with that above, to be situated in the same territory of Louisiana, within twenty leagues from this town of St. Louis.''

6th. Partition proceedings purporting to be among the devisees of John Mullanphy, by which, among other lands, the lands in dispute were partitioned and sold. Also commissioners' deed in said proceedings, dated August 30, 1889, conveying the land in question to Jere W. Clemens.

7th. Certified copy of will of Jere W. Clemens, probated in the State of California and recorded in Wayne county, Missouri, on March 4, 1895. After specifically describing numbers of tracts of land and disposing of same, by *Item Six* the will recites: ''All the rest of my property and estate, of every kind and wherever situated, including my interest of whatever kind in and to the land embraced in a lease for 999 years made by my grandfather, John Mullanphy, to Phillipine Duchesne and others, dated March 1, A. D. 1827, and recorded in the Recorder of Deeds office of said city of Saint Louis, I give, devise and bequeath, unto my executors, in trust for the following uses and purposes, to-wit:'' The defendants are named as executors and trustees.

8th. Defendants offered evidence tending to show that they had paid taxes on the land in question since the year 1885.

This sufficiently indicates the nature and character of the testimony upon which this cause was submitted to the court to enable us to determine the legal propositions. The record is before us for consideration.

## OPINION.

An examination of the pleadings discloses that plaintiff, John W. Noble, asserts title in fee to the land in dispute, but by the allegations of his petition and by the evidence offered upon trial, he bases his claim of fee in the land not upon an unbroken chain of title passing down from the Government, but upon such possession under color of title held by him and his grantors as vested the fee in him by limitation. We will not in this opinion discuss the sufficiency of plaintiff's evidence nor the goodness of his title by limitation, if he has any, but will leave his title entirely open and unaffected for further investigation and adjudication.

Defendants, by their answer, deny plaintiff's title, and expressly assert that the estate, title and interest which they have in the real estate described in the petition is a fee-simple title held by them as trustees under the will of Jere W. Clemens. This latter allegation on the part of defendants was unnecessary. Under the provisions of section 650, Revised Statutes 1899, defendants, as matter of defense, could have shown any title vested in them, either legal or equitable, without expressly setting forth their title in the answer. However, defendants by their answer restricted their defense to a fee-simple interest. Also, by their evidence they undertook to establish an unbroken chain of title emanating from the Government and vesting in themselves as trustees. The judgment rendered by the court, responding to defendants' answer and the court's conception of their evidence, finds that they, as trustees, are seized of an indefeasible estate in fee-simple in said real estate. If defendants have succeeded in establishing an unbroken chain of title from the Government to themselves, then the judgment is correct. If any links are missing in such chain of title the theory of defendants set up in their answer and adopted by them upon the trial of the case must fall

and the judgment cannot be sustained. [Stewart v. Lead Belt Land Co., 200 Mo. 281.]

No common source of title is relied upon in this case by either party. Plaintiff for the purpose only of showing that the title had emanated from the Government offered a patent issued in 1888 to Etienne Pepin, or his legal representatives, but nowhere claims to derive title, either mediately or immediately through Pepin or his legal representatives. On the other hand, defendants claim title through Pepin to Chouteau, Chouteau to Mullanphy, and the Government to Mullanphy. This case, like the Stewart case, differs from the case of Harrison Machine Works v. Bowers, 200 Mo. 219, and Graton v. Land & Lumber Co., 189 Mo. 322, in that the doctrine of common source of title was applied under the circumstances in those cases and held to be applicable in actions under section 650.

In order to show that John Mullanphy was the legal representative of Etienne Pepin, two deeds were offered in evidence, one dated February 28, 1804, from Pepin to Pierre Chouteau. This purports to convey 1600 arpens of land being a concession obtained from Don Charles Dehault DeLassus, Governor of Upper Louisiana, on the 18th day of October, 1800, to be taken between Darnesnes River and the swamp called "A Bequet" four or five miles northwest of the village of Portage Des Sious. The description in this instrument is very vague and indefinite. The original deed is written in French and there is attached thereto a translation into English made on the 7th day of April, 1885, and sworn to by J. W. Uppercu. This instrument is not acknowledged nor was its execution proved as required by the Laws of 1885. The objections to the introduction of this deed do not go to a want of acknowledgment or that it was not entitled to be recorded in Wayne county, Missouri. Neither do the objections raise the point that the certified copy of the record in Wayne county was not proper evidence.

It is very true that this deed does not describe the land involved in this action, but if it is otherwise unobjectionable it might be competent as tending to show that Pepin obtained a concession from the Governor of Upper Louisiana in connection with the Act of Congress of July 4, 1836, confirming this concession and allowing Pepin or his legal representatives to select other lands if the title to the concession failed.

The other deed introduced by defendants, dated October 16, 1806, was a deed from Peter Chouteau to John Mullanphy. This deed was first recorded in the District of St. Charles in 1807, and was next recorded in Wayne county, Missouri, on the 4th of February, 1904. The original deed is written in French; seems to be duly acknowledged and has attached thereto a translation in English which is not sworn to. Both the original and translation offered in evidence were certified copies of the record as it appears in Wayne county, Missouri. It does not appear when or by whom the translation was made. This deed, reading from the translation, purports to convey a tract of sixteen hundred arpens situated in the District of St. Charles as is proven by the concession of the said land granted to Mr. Etienne Pepin by Charles Dehault DeLassus on the 18th of October, 1800, and belonging to the said Chouteau for having purchased from the said Pepin. This further allegation appears in the said translation, to-wit: "It has been agreed upon and covenanted between the parties, that in case the said Mullanphy should be deprived of the possession of the said land here above sold, the said Peter Chouteau binds himself to give to the said Mullanphy under the same guaranty as above, the same quantity of land equally good and timbered with that above sold, to be situated in the same territory of Louisiana, within twenty leagues of this town of Saint Louis."

As stated above, the translation attached to the deed of Chouteau to Mullanphy is not dated. There is

nothing to show that this translation was recorded in the District of Saint Charles, while the original deed does appear to have been so recorded in that district. It was not recorded in the county of Wayne until 1904. Plaintiff objected to the introduction of this translation because it did not purport to have been made by an expert, and because it was not proved as required by law. Under these circumstances, especially considering the fact that this deed was not recorded until 1904 in Wayne county, we think that the provisions of section 909, Revised Statutes 1909, should govern as to this translation. That section requires the deed to be accompanied with a sworn translation in English. The translation attached to the Mullanphy deed was not sworn to. Therefore, in our opinion it should not have been admitted in evidence, and we think the plaintiff's objection was broad enough to justify this ruling.

It will be observed that the deed from Chouteau to Mullanphy describes the property as being situated in the District of Saint Charles. This court will take judicial notice of the fact that the territorial District of Saint Charles was located north of the Missouri river and that the present territorial limits of Wayne county were not embraced in that district. It will further take judicial notice of the fact that the lands situated in Wayne county are not within twenty leagues of the city of Saint Louis. [Harper Furniture Co. v. Southern Express Co., 12 Am. and Eng. Ann. Cases, 927, and notes to said case.]

Considering for the sake of argument the said deed to Mullanphy as properly in evidence, we find that Chouteau promised to guarantee the title to said property, and that in case Mullanphy should be deprived of his possession, Chouteau then bound himself under his guaranty to give to Mullanphy the same quantity of land to be situated in the same territory and within twenty leagues of the city of Saint Louis.

Twenty leagues would be sixty miles, and yet the county of Wayne is located over one hundred miles from the city of Saint Louis. If the title to this land failed and some other person established a better right thereto than Mullanphy, under the terms of this deed he had the right to call upon Chouteau to give him an equal amount of land located within sixty miles of the city of Saint Louis. For all we know, or are advised in this case, that course may have been pursued. There is absolutely nothing in the evidence, beyond the provisions of the deed last referred to, which tends to show that Mullanphy was the legal representative of Etienne Pepin.

In 1845 the Surveyor General, whose office was located in St. Louis, Missouri, issued his certificate No. 88, by which he found that 1600 arpens of land confirmed to Etienne Pepin, or his legal representatives, by Act of Congress approved on the 4th of July, 1836, had been regularly surveyed and numbered 3277, and that the whole quantity called for in the survey, to-wit, 1361.12 acres, had been sold or disposed of by the United States. The Surveyor General then finds and certifies that Etienne Pepin, or his legal representatives, is authorized to enter the same quantity of land in Missouri, in accordance with the said Act of July, 1836. Afterwards, on August 1, 1857, the Register of Lands at Jackson, Missouri, issued his certificate alleging that there had been presented to his office certificate No. 88 of the Surveyor General specifying that Etienne Pepin, or his legal representatives, were entitled to locate as a new location in consequence of valid interferences with the original claim, the amount of land specified in said certificate No. 88. And the said Register further certified that on that day, to-wit, August 1, 1857, said Etienne Pepin, or his legal representatives, had located certain lands, therein described, amounting to 1360 acres, among which are the lands

described in plaintiff's petition.   In the year 1888 a patent was issued, signed by President Cleveland, reciting the provisions of certificate No. 88 of the Surveyor General, the certificate of the Register at Jackson, Missouri, and the acts of Congress authorizing the same, and then by the express terms of said patent and in pursuance of the Act of Congress of July 4, 1836, the lands involved in this suit, with others, were conveyed to Etienne Pepin, or his legal representatives. There is nothing in the evidence offered in this case to show who procured the issuance of certificate No. 88 in 1845, by the Surveyor General, nor is it shown who presented said certificate No. 88 to the Register of Lands at Jackson, Missouri, on August 1, 1857.

Defendants cite the following cases:  Wear v. Bryant, 5 Mo. 147; Kirk v. Green, 10 Mo. 252; Holme v. Strautman, 35 Mo. 293, being actions growing out of the provisions of the Act of Congress of February 17, 1815.  This act followed very closely the great earthquake which almost entirely changed the topography of New Madrid county, and materially injured much of the land situated in that county.  By the provisions of the Act of 1815 owners of land in New Madrid county, which land had been injured by the earthquake, were given the right to locate elsewhere certain quantities of land, the injured land, upon re-location, to revert to and become the property of the Government.  This was somewhat of a proffered barter and exchange, and it was held that something must be done on the part of the owner, or his legal representatives, of the injured land to indicate his acceptance.  In speaking of those cases the following language is used in the case of Holme v. Strautman, supra:  "The case is totally dissimilar from that of a confirmation to a named person, 'or his legal representatives,' because the confirmations are regarded as pure donations and always beneficial to the grantees, and as requiring no act to

be performed by the confirmees in acceptance of the grants, whilst the act for the relief of sufferers by earthquakes in New Madrid, required the persons to be benefited by it to do acts which effected transfers to the Government of their land in New Madrid.'' In all the cases, however, cited by defendants, it was disclosed who made application for location or re-location certificates or patents. It probably was not necessary for such certificates or a patent to name and identify the representatives. It was a convenient way adopted by the Government officials to avoid determining the question as to who were the claimant's legal representatives. Yet, in this action under the facts and circumstances as disclosed, it does seem to us that defendants should have shown that Mullanphy, or his legal representative, was the claimant as the legal representative of Etienne Pepin, and that it was he, or his legal representative, who procured the issuance of certificate No. 88, dated in 1845, of the Register's certificate at Jackson, Missouri, certifying to the re-location, dated in 1857, and of the patent issued in 1888. Unquestionably the records of the various Government offices will disclose who the person was that claimed to be the legal representative of Pepin. The original certificate No. 88 issued by the Surveyor General, was evidently surrendered on August 2, 1857, when the re-location certificate was issued. Evidence of who surrendered that certificate could certainly be easily obtained.

We have indicated the errors in the trial of this cause. Upon the evidence disclosed by the record the judgment and decree of the trial court cannot be maintained. As before stated, we will express no opinion upon the evidence as introduced by plaintiff. While it may not be out of place to say that plaintiff's showing upon his claim of title was of a substantial character, yet as the case must be retried we leave the question involved entirely open to be disposed of by the trial court upon the evidence as introduced upon such sec-

ond trial. The judgment of the trial court should be reversed and the cause remanded for a new trial. It is so ordered. All concur.